# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 26, 2024      Decided April 25, 2025

No. 23-7116

CHAZZ CLEVINGER,
APPELLEE

v.

ADVOCACY HOLDINGS, INC., D/B/A ONECLICKPOLITICS,
APPELLANT

RAYMOND ZENKICH, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-01159)

*Anand Vijay Ramana* argued the cause for appellant. With him on the briefs was *Lyndsey Marie Wajert*.

*Kenneth E. Chase* argued the cause and filed the brief for appellee.

Before: PILLARD and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

2

WALKER, *Circuit Judge*: Advocacy Holdings sued its former CEO for breach of a noncompete agreement. The district court partially denied Advocacy's motion for a preliminary injunction, holding that Advocacy had not established a likelihood of irreparable harm. We affirm.

### I. Background

Advocacy Holdings helps clients influence public policy. Among its tools is an online platform called OneClickPolitics. The platform connects a client's supporters to legislators and other policymakers through emails, social media, and telephone calls. *Who We Are*, OneClickPolitics, https://perma.cc/D6CS-ALE6; *Testimonials*, OneClickPolitics, https://perma.cc/AV4A-W7WR.

In 2016, Advocacy made Chazz Clevinger its Vice President. Later, it promoted him to CEO. After that, Clevinger signed an employment agreement, which includes a noncompete provision. It provides that when Clevinger's employment ends, he cannot compete with Advocacy for one year, cannot solicit its customers for one year, and cannot use its confidential information for five years. The agreement also contains a stipulation that Advocacy will suffer "irreparable harm" if Clevinger "violates any of the restrictions or obligations set forth." JA 74.

In 2023, Clevinger resigned and — according to Advocacy — flagrantly violated the noncompete agreement. He allegedly stole Advocacy's customer list, started two competing businesses, solicited Advocacy's customers, falsely told them Advocacy was closing its lobbying services, and created a near duplicate of a soon-to-be-released version of Advocacy's OneClickPolitics platform. Advocacy says that

3

Clevinger even replicated OneClickPolitics' typos on his new platform.

Advocacy sued Clevinger for breach of the noncompete agreement. It moved to preliminarily enjoin Clevinger's alleged conduct. But the district court denied the motion, holding that Advocacy had not established that it would suffer irreparable harm absent injunctive relief.

Advocacy moved for reconsideration, attaching additional evidence that it says shows how Clevinger copied OneClickPolitics. In response, the district court partially granted Advocacy's motion and enjoined Clevinger "from using Advocacy Holdings' platform design and interface." *Clevinger v. Advocacy Holdings, Inc.*, Nos. 23-1159, 23-1176, 2023 WL 5220570, at *3 (D.D.C. Aug. 15, 2023). But the court declined to enjoin Clevinger from operating his competing businesses or from soliciting Advocacy's customers.

Advocacy then appealed the district court's partial denial of the preliminary injunction.

We affirm.

**II. Analysis**

To obtain a preliminary injunction, a movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

We review a district court's legal conclusions de novo — including its legal conclusion about the likelihood of

4

irreparable harm.  *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 726 (D.C. Cir. 2022). We review any weighing of the preliminary injunction factors for abuse of discretion.  *Id.*  And we accept a district court's factual findings unless they are clearly erroneous.  *Id.*

### A. Advocacy Has Not Shown Irreparable Harm

Advocacy Holdings says it will suffer two principal injuries without a preliminary injunction: (1) loss of customers (because Clevinger allegedly solicited its clients); and (2) reputational harm (because Clevinger allegedly misrepresented Advocacy's future plans).[1]  We agree with the district court that, in the context of this case, those injuries are not irreparable.

---

[1] Advocacy devotes two sentences to a third alleged injury, "loss of customer trust and goodwill" from Clevinger's alleged "misuse of . . . confidential and or proprietary information."  Appellant's Br. 34.  To the extent this argument is preserved, it fails on the merits.  *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work" (cleaned up)).  The only case Advocacy cites in support of this alleged injury dealt with a far different situation.  *See* Appellant's Br. 34 (citing *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 77 (D.D.C. 2001)).  There, a former employee took "extremely private and sensitive" client financial information from his employer "without the clients' permission," risking "a loss of trust and goodwill" from clients who may "feel that their personal information is not safe with the plaintiff."  *Rothe*, 150 F. Supp. 2d at 77-78.  Here, Advocacy alleges only that Clevinger took customer "contacts" — information far less likely to impair "customer trust and goodwill" than the sensitive financial information at issue in *Rothe*.  *Id.* at 77.

5

### 1. The Standard for Irreparable Harm

We are mindful of the "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Such an injury "must be both certain and great." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a" preliminary injunction "are not enough." *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958).

We are also mindful that rigid rules and equity principles mix like oil and water. So not surprisingly, no categorical rule precludes preliminary injunctions that protect noncompete agreements. In some cases, breaches of a noncompete must be preliminarily enjoined because "economic losses from the breach are either incalculable or so substantial as to threaten the employer's ability to stay in business." *Hospitality Staffing Solutions, LLC v. Reyes*, 736 F. Supp. 2d 192, 199 (D.D.C. 2010). But in other cases, courts can remedy the breach of a noncompete agreement with compensatory relief. And the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Virginia Petroleum*, 259 F.2d at 925.

### 2. Loss-of-Customers Injury

Advocacy says that without a preliminary injunction, it will lose customers. But Advocacy has failed to show that its loss of customers will mean more than lost revenue — a financial injury. And financial injuries are rarely irreparable because they are presumptively remediable through monetary damages. *Wisconsin Gas*, 758 F.2d at 674.

6

Advocacy asserts that it would be impossible "to even generally calculate the loss of future revenues from stolen customers." Appellant's Br. 35. But Advocacy doesn't substantiate that claim. To the contrary, courts often find damages from the loss of customers to be calculable. *See, e.g.*, *Economic Research Services, Inc. v. Resolution Economics*, *LLC*, 140 F. Supp. 3d 47, 52-53 (D.D.C. 2015); *Reyes*, 736 F. Supp. 2d at 200. Advocacy has provided no persuasive reason why that isn't true here.

Nor is Advocacy's financial injury so great as to threaten its continued existence. Indeed, Advocacy stated in its opening brief that it is "performing better than ever." Appellant's Br. 36. And it told the district court that it is "roughly cash flow break even" and "not going out of business any time soon." JA 692. Accordingly, the district court did not clearly err in finding that Advocacy is not going out of business. *Clevinger v. Advocacy Holdings, Inc.*, Nos. 23-1159, 23-1176, 2023 WL 4560839, at *6 (D.D.C. July 15, 2023).

In short, Advocacy has failed to show that its loss of customers cannot be remedied through monetary damages should it prevail at the close of litigation.

### 3. Reputational Injury

Next up is Advocacy's reputational injury. It stems from alleged misrepresentations Clevinger made to Advocacy's customers while soliciting them. Clevinger allegedly led customers to believe that (1) Advocacy was "closing," (2) there were "major changes underway," and (3) Advocacy was "transitioning to another platform." Appellant's Br. 36.

7

The problem for Advocacy is that there's "nothing in the record to suggest" that Clevinger directed the claimed misrepresentations to anyone besides the Advocacy customers he solicited. Oral Arg. Tr. 21. Nor has Advocacy demonstrated that those customers passed along those misrepresentations to anyone else. So Clevinger's alleged misrepresentations led, at worst, to a loss of Advocacy's customers. And that returns us to a loss-of-customers injury that is remediable with monetary damages. *See supra* Section II.A.2.

### 4. The Stipulation of Irreparable Harm

Finally, Advocacy points to a stipulation of irreparable harm in the noncompete agreement. But Advocacy acknowledges that it "didn't make any explicit arguments" about the stipulation "in the initial preliminary injunction motion," and it has no excuse for not doing so when the stipulation was fully available to Advocacy before it filed its initial motion for a preliminary injunction. Oral Arg. Tr. 5. Because Advocacy forfeited reliance on the stipulation, we decline to consider it. *See GSS Group Ltd. v. National Port Authority*, 680 F.3d 805, 812 (D.C. Cir. 2012).

### B. Advocacy Cannot Obtain a Preliminary Injunction Without Showing Irreparable Harm

Advocacy also argues that the district court erred by not evaluating all four preliminary injunction factors under a "holistic, sliding-scale analysis." Appellant's Reply Br. 6. Under that approach, a movant's failure to establish one of the four factors does not always doom its motion for a preliminary injunction. On the sliding scale, at least sometimes, "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).

8

It is questionable that the sliding scale approach remains good law after 2008, when the Supreme Court decided *Winter v. Natural Resources Defense Council, Inc*. That opinion can be read to require movants to establish *each* preliminary injunction factor independently. 555 U.S. 7, 20-22 (2008). But we have (somehow) gone seventeen years without needing to say if *Winter* really meant what it can be read to have said.[2]

One day, we will need to answer that question. But not today. Advocacy forfeited its sliding-scale argument by not raising that argument until its reply brief. *See McBride v. Merrell Dow & Pharmaceuticals, Inc.*, 800 F.2d 1208, 1210-11 (D.C. Cir. 1986). And in any event, even under the sliding-scale approach, a "movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors . . . merit such relief." *Chaplaincy*, 454 F.3d at 297; *see also CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *cf. Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring) ("If the moving party has not demonstrated irreparable harm, then this Court can avoid delving into the merits.").[3] So the district court

---

[2] *See, e.g.*, *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009); *Sherley*, 644 F.3d at 393; *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016); *Archdiocese of Washington v. Washington Metropolitan Area Transit Authority*, 897 F.3d 314, 334 (D.C. Cir. 2018); *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022); *cf. Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1574 (2024) ("the traditional four-factor test"); *see also id.* at 1579 (four "equitable factors").

[3] We have also declined to "proceed to review the other three preliminary injunction factors" when the movant has "shown no

9

did not err in declining to evaluate the remaining preliminary injunction factors.

### III. Conclusion

We understand the contempt for Clevinger's alleged conduct expressed in Advocacy's briefs.  But Advocacy has not demonstrated that it needs a preliminary injunction to fix the injuries at issue in this appeal.  If Advocacy can prove what it alleges, the district court can order Clevinger to compensate Advocacy for its injuries with monetary damages.

For that reason, we affirm the order of the district court.

*So ordered.*

---

likelihood of success on the merits." *Arkansas Dairy Cooperative Association, Inc. v. U.S. Department of Agriculture*, 573 F.3d 815, 832 (D.C. Cir. 2009); *see also Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253-54 (D.C. Cir. 2006).